UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIXTO RODRIGUEZ,

        Plaintiff,

v.                             Case No:   2:15-cv-585-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

**ORDER**

Plaintiff Sixto Rodriguez appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is affirmed.

**I.     Issues on Appeal**

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated Plaintiff's literacy; (2) whether the ALJ properly assessed Plaintiff's ability to speak English; and (3) whether substantial evidence supports the ALJ's finding that Plaintiff has mild difficulties in social functioning.

**II.    Procedural History and Summary of the ALJ's Decision**

On August 24, 2011, Plaintiff protectively filed applications for a period of DIB and SSI alleging that he became disabled and unable to work on June 1, 2011 due to a nephrectomy and kidney cancer.   Tr. 99, 109, 271-73.   The Social Security

Administration denied his claim initially on September 7, 2011, and upon reconsideration on December 7, 2011.   Tr. 129-39, 144-53.   Plaintiff requested and received a hearing before ALJ Joseph L. Brinkley on January 7, 2014, during which he was represented by his attorney.   Tr. 222-37.   Plaintiff, with the assistance of a Spanish interpreter, and a vocational expert ("VE"), Steve Bast, testified at the hearing.

On March 19, 2014, the ALJ issued a decision finding that Plaintiff was not disabled and denied his claim.   Tr. 25-36.   The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.   Tr. 27.   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2011, the alleged onset date.   *Id.*   At step two, the ALJ determined that Plaintiff has the following severe impairments: allergic rhinitis; status-post renal cell carcinoma with status-post nephrectomy of the right kidney; premature ventricular contractions; fatigue; dyslipidemia; loss of visual acuity in the right eye; and depression.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 28.

In doing so, the ALJ specifically considered the four broad functional areas set out in the regulations for evaluating mental disorders in section 12.00 of the Listing of Impairments, the so-called "paragraph B" criteria.[1]   Tr. 28-29.   In the first

---

[1] 20 C.F.R., pt. 404, subpt. P. app. 1.

functional area of daily living, the ALJ determined that Plaintiff has mild restriction. Tr. 28.   The ALJ noted that Plaintiff sometimes performed chores.   *Id.*   In the next functional area, social functioning, the ALJ found that Plaintiff has mild difficulties. *Id.*   The ALJ noted that although Plaintiff felt very sad and wanted to be alone due to depression, Plaintiff sometimes drove with his family to shop and lived with his wife, daughter, and father-in-law.   *Id.*

In the third functional area of concentration, persistence, or pace, the ALJ found Plaintiff to have moderate difficulties.   *Id.*   The ALJ indicated that Plaintiff reported he could concentrate only eight to ten minutes and had difficulty reading and following instructions to prepare dinners.   *Id.*   The ALJ, however, noted that Plaintiff was able to advance in his job when he worked in the construction industry. *Id.*   The ALJ also stated that Plaintiff has a valid United States driver's license after passing a test administered in English and Spanish, drives, and is able to understand the driving signs in English.   *Id.*   In the fourth functional area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration.   *Id.*

Taking into account the effects of all of Plaintiff's impairments, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).   Tr. 29.   The ALJ, however, noted that Plaintiff's ability to perform light work is subject to a number of limitations, including Plaintiff's limited ability to speak English.   *Id.*   Next, the ALJ found that Plaintiff was unable to perform his past relevant work ("PRW"), but there

are jobs existing in significant numbers in the national economy that Plaintiff can perform.   Tr. 34-35.   Thus, the ALJ found Plaintiff was not disabled and denied his claim.   Tr. 36.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on August 6, 2015.   Tr. 1-6.   Accordingly, the March 19, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on September 25, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 17, 18.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011).   The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Atha*, 616 F. App'x at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."   *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence,

the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner,* 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### a.   Whether the ALJ properly evaluated Plaintiff's literacy

In evaluating Plaintiff's RFC, the ALJ found that Plaintiff can perform light work, except that Plaintiff is "limited in the ability to speak English, but can speak some English and is better at understanding it than speaking it."   Tr. 29.   During the hearing, the ALJ's hypothetical question to the VE also included "a limited ability to speak and understand English, but would be able to understand simple – although, not speak it – English."   Tr. 86.   The ALJ limited his hypothetical question to "unskilled, simple, routine, repetitive tasks and to work that does not require production quotas and/or fast-paced assembly line jobs."   Tr. 87.

Plaintiff argues that the ALJ erred by making findings about Plaintiff's ability to speak and understand English, but not about Plaintiff's ability to read and write English.   Doc. 25 at 8-9.   Plaintiff argues that he is functionally illiterate because he cannot read English and write any more than his name in English.   *Id.* at 9. Plaintiff asserts that he cannot read detailed messages such as TV dinner instructions and did not have to understand English when he passed his driver's license test.   *Id.*   Because the ALJ did not include Plaintiff's illiteracy in his hypothetical question to the VE, Plaintiff asserts that the VE provided a list of jobs that Plaintiff cannot perform.   *Id.* at 11.

The Commissioner responds that the evidence does not support Plaintiff's illiteracy, and the ALJ properly accounted for Plaintiff's limited English in the ALJ's hypothetical question to the VE.   Doc. 26 at 5-6.   Regardless, the Commissioner argues that the ALJ's hypothetical question limited Plaintiff to unskilled work to which literacy or the ability to communicate in English has the least significance. *Id.* at 6.

An ability to communicate in English is defined as the ability to speak, read and understand English.   20 C.F.R. § 404.1564(b)(5); *Lorenzo v. Comm'r of Soc. Sec.,* No. 6:10-cv-369-Orl-18DAB, 2011 WL 2681986, at *6 (M.D. Fla., July 7, 2011).   The Social Security Administration considers a person's ability to communicate in English in evaluating what work, if any, he or she can do because a person who does not speak and understand English may have a difficulty doing a job regardless of the person's level of education in another language.   20 C.F.R. § 404.1564(b)(5).

An inability to communicate in English is a distinguishable concept from illiteracy. *Davila v. Colvin*, No. 8:12-cv-2334-T-TGW, 2014 WL 495525, at *12 (M.D. Fla., Feb. 5, 2014). "Illiteracy means the inability to read and write." 20 C.F.R. § 404.1564(b)(1). A person is illiterate if "the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). "Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). Accordingly, a person is not illiterate if the person "successfully completed the equivalent of a high school education in [a foreign country,] and he understands and can read some English." *Davila*, 2014 WL 495525, at *12.

The Court finds that the ALJ properly assessed Plaintiff's literacy. Plaintiff testified that he has lived in the United States since April 27, 2000 and received a college degree in special education and legal rights in Cuba. Tr. 66-67; *see Davila*, 2014 WL 495525, at *12. Furthermore, as the Commissioner points out, in assessing Plaintiff's concentration, persistence or pace at step two, the ALJ evaluated Plaintiff's ability to speak English by noting that:

> [Plaintiff] then reported that he has difficulty reading and following instructions to prepare ready to eat dinners. Nonetheless, he stated that while working in [] the construction industry he was able to move up on the job. He has a valid United States driver's license after he was given a test that was administered in Spanish and English, and he drives. The driving signs are in English and he is able to understand them.

Tr. 28. Likewise, during the hearing before the ALJ, Plaintiff testified that he "was able to read a little bit" while working in construction and also is able to understand

and follow the road signs in English.   Tr. 28, 67, 69.   Therefore, the evidence in the record speaks to the contrary of Plaintiff's argument that he cannot understand or even read simple English.   Tr. 69, 294; *Davila*, 2014 WL 495525, at *12 (finding that the plaintiff was not illiterate when he obtained the equivalent of a GED in Puerto Rico and could read in English "something short").   Because substantial evidence supports the ALJ's finding with respect to Plaintiff's literacy, the ALJ's hypothetical question properly accounted for Plaintiff's limited ability to speak English rather than Plaintiff's illiteracy.   Tr. 86.

Even if the ALJ erred by omitting illiteracy from his hypothetical question, this was a harmless error because the ALJ limited his hypothetical question to "unskilled, simple, routine, repetitive tasks."   Tr. 87.   As the Commissioner notes, "at the unskilled level, literacy or ability to communicate in English has the least significance."   Doc. 26 at 6; 20 C.F.R., pt. 404, subpt. P. app. 2.   Hence, Plaintiff's illiteracy or limited ability to speak English does not significantly affect the availability of unskilled light work.   *Davila*, 2014 WL 495525, at *13.

### b. *Whether the ALJ properly assessed Plaintiff's ability to speak English*

In evaluating Plaintiff's RFC, the ALJ found that Plaintiff "is limited in the ability to speak English, but can speak some English and is better at understanding it than speaking it."   Tr. 29.   As noted, the ALJ's hypothetical question also included "a limited ability to speak and understand English, but would be able to understand simple – although, not speak it – English."   Tr. 86.

Plaintiff argues that the ALJ's finding of Plaintiff's ability to speak "some English" in assessing Plaintiff's RFC is vague and equivocal.   Doc. 25 at 12; Tr. 29. Plaintiff asserts that because the ALJ's usage of the word "some" does not specify Plaintiff's level of English, it caused prejudice to Plaintiff at step five because the ALJ posed an incomplete hypothetical question to the VE.   Doc. 25 at 12.   Plaintiff claims that if the term "some English" means an ability to read road signs in English, the term may be interpreted to be more restrictive than the term "simple English," which the ALJ used in his hypothetical question to the VE.   *Id.*   Plaintiff claims that a person need not be able to understand even simple English in order to be able to read road signs.   *Id.* at 13.   As a result, Plaintiff argues that because of the difference in the two terms, the ALJ's hypothetical question was incomplete.   *Id.*

The Commissioner responds that substantial evidence supports the ALJ's hypothetical question, and any difference in the wording was harmless error at best. Doc. 26 at 6.   The Commissioner argues that Plaintiff's ability to read and write in English was good enough to contribute to his construction job.   *Id.* at 8; Tr. 67.   The Commissioner asserts that based on this evidence, the ALJ was correct not to limit Plaintiff's ability to read and understand to simply reading road signs.   Doc. 26 at 8. Furthermore, the Commissioner argues that the ALJ intended to use the two terms, "some English" and "simple English," synonymously and not to impose additional limitations.   *Id.*   Even if the terms were not synonymous, the Commissioner argues that the error was harmless and would not alter the ALJ's finding of Plaintiff's RFC. *Id.*

Here, the Court finds that the ALJ did not err in using two different terms to describe Plaintiff's ability to speak English.   The ALJ's use of the term "some English" was not vague or equivocal because the ALJ's decision provides enough context to Plaintiff's ability to speak English.   The decision notes that Plaintiff was able to advance in the construction industry and is able to follow road signs in English.   Tr. 28.   In evaluating Plaintiff's RFC, the ALJ also modified the use of the term "some English" as being "better at understanding than speaking it."   Tr. 29. Furthermore, contrary to Plaintiff's argument, the ALJ's hypothetical question assumed an even more limited ability to speak English because the question defined an ability to speak English to "understand simple – although not speak it – English." Tr. 86.   As a result, the ALJ's hypothetical question was consistent with his RFC assessment and properly accounted for Plaintiff's limited ability to speak English. *See Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir. 1999), *quoted in Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.").

Regardless, as the Commissioner points out, the difference in the meaning of the two terms is such nuance that it could not affect the ALJ's overall finding of Plaintiff's RFC, which was based on Plaintiff's various medical records and testimonies, not based upon Plaintiff's limited ability to speak English, which Plaintiff did not challenge on appeal.   Tr. 29-34.

> ### c. *Whether substantial evidence supports the ALJ's finding that Plaintiff had mild limitation in social functioning*

At step three, the ALJ held that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.04. Tr. 28. In his evaluation of Plaintiff's mental impairments, the ALJ analyzed the degree of limitations imposed by Plaintiff's mental impairments in four functional areas including social functioning. *Id.* In the area of social functioning, the ALJ noted that Plaintiff:

> testified that he is very sad and wanted to be alone due to depression, but admitted that he drives sometimes with the family to shop. He also reported that he lives with his wife, daughter (age twenty-two and goes to college), and his father-in-law, who is in his eighties and retired. As a result, I find that he only has mild difficulties in this functional area.

*Id.*

Plaintiff asserts that the ALJ erred in finding that Plaintiff has mild difficulties in social functioning. Doc. 25 at 14; Tr. 28. Plaintiff argues that the ALJ failed to sufficiently document the application of a Psychiatric Review Technique Form ("PRTF") to the ALJ's analysis of Plaintiff's social functioning. Doc. 25 at 14. Plaintiff claims that the ALJ's analysis of Plaintiff's activities is improper and insufficient because Plaintiff "not that often" shopped with his family and with whom he lives is not relevant to the determination of severity. *Id.* at 14-15. Furthermore, Plaintiff asserts that his medical treatment notes show Plaintiff's mood swings and behavioral problems. *Id.* at 14. In support, Plaintiff refers to his statements to a mental health counselor in December 2013 that his life has changed since his kidney surgery as he does not get out as he used to, and there are times that he does not

want to leave the house.   *Id.* at 15; Tr. 518, 524.   Plaintiff also argues that Raymond Johnson, M.D., who performed a psychiatric evaluation of Plaintiff on January 3, 2014, noted that Plaintiff had visual hallucinations, depressed mood, lethargic sensorium, and slow-paced speech.   Doc. 25 at 15; Tr. 512-13.   As a result, Plaintiff asserts that the ALJ should have considered at least some social limitations in assessing Plaintiff's RFC.   Doc. 25 at 16.

The Commissioner argues that the ALJ properly used PRT ratings, and substantial evidence supports the ALJ's finding of mild limitations in Plaintiff's social functioning.   Doc. 26 at 10.   The Commissioner asserts that Plaintiff denied depression in the years 2011 and 2012, and the record first mentioned his depression in May 2013.   *Id.*   The Commissioner claims that despite being recommended for mental health counseling, Plaintiff did not seek mental health treatment until December 2013.   *Id.*   When Plaintiff sought mental health treatment in December 2013, the Commissioner argues that Plaintiff appeared normal.   *Id.* at 11. Furthermore, the Commissioner points out that Plaintiff testified of living with his wife, adult daughter, and father-in-law during the hearing.   *Id.*   Regardless, the Commissioner argues that because Plaintiff's depression first appeared in the record in May 2013, and the ALJ's decision was issued on March 19, 2014, this impairment did not last at least twelve continuous months.   *Id.* at 10.

The Social Security Regulations provide that an "impairment or combination of impairments is not severe if it does not significantly limit your . . . . mental ability to do basic work activities."   20 C.F.R. § 404.1521(a).   Basic work activities mean

"the abilities and aptitudes necessary to do most jobs."  *Id.* § 404.1521(b). Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting.  *Id.* § 404.1521(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case.  20 C.F.R. § 404.1520a; *see* Tr. 28.  Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more.  20 C.F.R § 404.1520a(c)(4).  Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).  The ALJ's decision must incorporate findings and conclusions based on the special technique.  20 C.F.R. § 404.1520a(e)(4).

The Court finds that the ALJ's finding of mild difficulties in social functioning is supported by the record, which the ALJ further discussed when assessing Plaintiff's

RFC.   Tr. 28, 33.   On June 10, 2011, Plaintiff visited Lee Memorial Hospital, and James D. Borden, M.D., examined Plaintiff.   Tr. 364.   Dr. Borden's notes from this visit recorded as Plaintiff's psychosocial history that Plaintiff is unemployed and married and denies tobacco, alcohol, or illegal drug use, and Plaintiff's past medical history did not include depression.   *Id.*   In fact, throughout Dr. Borden's examinations of Plaintiff during the year 2011, Dr. Borden did not note depression as part of Plaintiff's past medical history, and consistently reported in Plaintiff's neurologic examination as being alert, oriented, and appropriate as to person, place, and time.   Tr. 360, 364-65, 370-71, 376, 378, 383, 411-12, 434, 436, 439.

Furthermore, Dr. Borden explicitly opined that Plaintiff does not have anxiety, depression, or suicidal ideation on June 17, 2011, August 18, 2011, August 22, 2011, September 8, 2011, September 29, 2011, and October 7, 2011.   Tr. 377, 379, 384, 435, 437, 440.   Likewise, on August 22, 2011 and May 30, 2012, Jasper J. Rizzo, D.O., examined Plaintiff and also opined that Plaintiff does not have anxiety, depression, or suicidal ideation.   Tr. 377, 428.   Luis Cardentey, M.D., who examined Plaintiff on November 9, 2011, noted that Plaintiff's only psychological symptom was insomnia, and his psychiatric examination was normal.   Tr. 392-94.   Although the ALJ did not explicitly discuss the medical opinions from the years 2011 and 2012 in evaluating Plaintiff's mental impairments at step four, these opinions support the ALJ's finding that Plaintiff only has mild difficulties in social functioning.   Tr. 28, 33.

On February 25, 2013, the treatment notes of Sindy Bernot, M.D., Plaintiff's primary care physician, appear for the first time.   Tr. 454.   In contrast to the previous medical records, Dr. Bernot's notes from this visit show that Plaintiff's past medical history includes an unspecified episodic mood disorder.   Tr. 457.   Dr. Bernot noted that Plaintiff's depression started on or about September 28, 2012, and Plaintiff also started taking Prozac[2]  10 mg once per day on or around the same date.   Tr. 453, 456.   Dr. Bernot, however, noted that during this visit, Plaintiff was oriented to person, place, and time and appeared well-nourished and in no distress.   Tr. 454.   Although the ALJ did not discuss Dr. Bernot's opinion from this visit, the ALJ noted other doctors' opinions discussed below, which similarly included both Plaintiff's history of depression and normal psychiatric examinations.   Tr. 33.

On May 6, 2013, Plaintiff visited the emergency department of Lee Memorial Hospital, and was examined by Sreehar Gelli, M.D.   Tr. 417.   Dr. Gelli noted depression in Plaintiff's past medial history and a history of depression in the assessment of Plaintiff.   Tr. 417-18.   Similar to Dr. Bernot, however, Dr. Gelli recorded that Plaintiff had a normal effect, was alert and oriented, and appeared to be in no acute distress during this visit.   Tr. 418.   In addition, Dr. Gelli reported that Plaintiff was not being followed by a psychologist or psychiatrist.   Tr. 417. Jesus Mendiolaza, M.D., of the emergency department at Lee Memorial Hospital examined Plaintiff on May 7, 2013 and also recorded Plaintiff's history of depression

---

[2]     Prozac     is     an     antidepressant     medication.     Drugs.com, http://www.drugs.com/prozac.html (last visited Feb. 2, 2017).

in Plaintiff's past medical history.   Tr. 420.   Dr. Mendiolaza, however, added that Plaintiff was awake, alert, and oriented, although Plaintiff appeared nervous, and his mood was appropriate.   Tr. 421.   Dr. Mendiolaza also did not note depression in his assessment of Plaintiff.   *Id.*   On May 7, 2013, after diagnosing Plaintiff with a history of depression, Dr. Gelli discharged Plaintiff, continuing him on the same dosage of Prozac.   Tr. 423.   In evaluating Plaintiff's RFC, the ALJ considered and discussed Plaintiff's history of depression and prescription of Prozac during this visit to the emergency department.   Tr. 33.

On May 22, 2013, Dr. Bernot noted Plaintiff's daughter's report that Plaintiff had been having a lot of recent mood swings in addition to having depression and called Ruth Cooper to make an appointment, only to be told that they did not accept patients at that time.   Tr. 444.   Dr. Bernot opined that Plaintiff was positive for behavioral problems, had disturbed wake/sleep cycle and dysphoric mood, and was nervous/anxious.   Tr. 444-45.   Dr. Bernot diagnosed Plaintiff with mood swings and recommended that he walk in at Ruth Cooper or to go visit Vista if he had any issues. *Id.*   During this visit, however, Plaintiff was oriented to person, place, and time and appeared well-nourished and in no distress.   Tr. 445.   Dr. Bernot also continued Plaintiff on the same dosage of Prozac and did not opine any functional limitations on Plaintiff's ability to perform basic work.   Tr. 445-46.   In evaluating Plaintiff's RFC, the ALJ discussed and afforded great weight to Dr. Bernot's opinion from this particular visit.   Tr. 33.

On June 13, 2013 and August 6, 2013, Plaintiff saw Dr. Mendiolaza for his health issues that included depression and an unspecified episodic mood disorder. Tr. 466, 472, 474.   Dr. Mendiolaza noted depression and an unspecified mood disorder in Plaintiff's past medical history and diagnosed him with depression on June 13, 2013 and with both depression and an unspecified mood disorder on August 6, 2013.   Tr. 467, 469, 475, 478.   Inconsistent with Dr. Bernot's opinion from May 22, 2013, however, Dr. Mendiolaza opined that Plaintiff was negative for depression and memory loss and was not nervous/anxious.   Tr. 467, 475.   Furthermore, Dr. Mendiolaza also recorded that Plaintiff was alert, in no distress, and oriented to person, place, and time.   Tr. 468, 476.

On December 10, 2013, Plaintiff visited SalusCare, Inc. and was examined by Lori Welton, CLN-MA.   Tr. 515-524.   Plaintiff stated to Ms. Welton that Plaintiff had surgery to remove his kidney two years prior, which affected his heart and caused him difficulty breathing and irregular heartbeat.   Tr. 524.   As a result of this, Plaintiff reported that his life has changed drastically, and he is not the same person anymore because he does not go out as he used to, and there are times that he does not want to leave the house.   *Id.*   Furthermore, he claimed that he worries about what will happen to his family if something happens to him, and it is not unusual for him to wake up in the middle of the night and pace around the house.   *Id.*   In addition, Ms. Welton noted that Plaintiff feels hopeless about his current life situation and started crying when talking about feeling hopeless.   Tr. 518.   Plaintiff also described that his mood is "not good," and he has lost interest or enjoyment in

life and felt bad about himself or that he let others down in the last year.   Tr. 519.

As a result, Plaintiff reported to Ms. Welton that his family can see how he has

changed, and he worries about his family and cannot focus as he used to.   Tr. 519.

Ms. Welton also recorded that Plaintiff is unable to work due to his poor health.   Tr.

516.

     In contrast, Ms. Welton observed that Plaintiff does not have any thought of

harming himself or another person, or have attempted suicide, posing no risk of

violence.   Tr. 518.   Furthermore, despite his mood being "not good," Plaintiff rated

his mood as average, giving a score of five on a scale of ten.   Tr. 519.   He also

reported that his energy level is slightly below average, rating four on a scale of ten.

*Id.*   In addition, Ms. Welton noted that Plaintiff was clean and casually dressed,

appeared relaxed, and responded to all questions with detailed responses.   Tr. 516.

Plaintiff's thought process and content were normal and appropriate, although he

appeared sad and cried while talking about feeling hopeless.   *Id.*   Plaintiff also had

appropriate and normal mood, demeanor, and eye contact as well as being oriented

in all spheres.   *Id.*

     Based on her examination of Plaintiff, Ms. Welton diagnosed Plaintiff with

"ADJUST[MENT] REACTION W MIXED EM."[3]   Tr. 515.   Ms. Welton opined that

Plaintiff had ideas of hopelessness and worthlessness, impaired short term memory,

---

[3]   There are six types of adjustment disorders.   Healthline,
www.healthline.com/adjustment-disorder#Symptoms2 (last visited Feb. 8, 2017).   Ms.
Welton seems to have diagnosed Plaintiff with an "adjustment disorder with mixed
disturbance of emotions and conduct."   *See id.*

poor insight, visual hallucinations, despairing mood/affect, and tangential and blocked thoughts.   Tr. 522.   Otherwise, Plaintiff had fair judgment, coherent thoughts, normal speech and psychomotor, no suicidal or homicidal risks.   Tr. 522-23.   Plaintiff also was oriented in all spheres.   Tr. 522.   Plaintiff did not have any mental retardation or skills-based disorders such as stuttering, reading disorder, or expressive language disorder.   Tr. 515.   Furthermore, Plaintiff's Global Assessment of Functioning ("GAF") score was fifty-five (55).   Tr. 516.   The ALJ observed that the GAF score is "denoting only moderate symptoms, consistent with the fourth edition of the Diagnostic and Statistcal Manual of Mental Disorders."   Tr. 33.   At the end of this visit, Ms. Welton did not recommend any medication but only a specific diagnosis and found that Plaintiff's needs are not urgent but routine.   Tr. 521.   The ALJ considered Ms. Welton's opinion in evaluating Plaintiff's RFC and assessing the severity of Plaintiff's impairments, although the ALJ noted that Ms. Welton, a mental health counselor, is an unacceptable medical source.   Tr. 33.

On January 3, 2014, Dr. Johnson at SalusCare, Inc., performed a psychiatric evaluation of Plaintiff.   Tr. 509.   Dr. Johnson noted that Plaintiff had his kidney removed and is depressed and low in energy.   *Id.*   Dr. Johnson also noted that Prozac is not helping Plaintiff, and Plaintiff is not sleeping at all.   *Id.*   As a result, Dr. Johnson ordered a small dosage of Ambien,[4] which, according to his caution to Plaintiff's daughter, could make Plaintiff sleepy in the daytime.   *Id.*   Dr. Johnson

---

[4]   Ambien is a medication used to treat insomnia.   Drugs.com, www.drugs.com/ambient.html (last visited Feb. 8, 2017).

also noted that Plaintiff had visual hallucinations,[5] blocked thoughts, depressed and flat mood/affect, lethargic sensorium, and slow-paced speech.   Tr. 513. Furthermore, Dr. Johnson recorded that Plaintiff does construction work, but "feels too sick to work" without specifying what is causing Plaintiff's sickness.   Tr. 511.

Otherwise, Plaintiff's examination was normal: he had coherent, logical and goal-directed thoughts, fair judgment and insight, no suicidal or homicidal thoughts, and no psychomotor problems.   Tr. 511-13.   Furthermore, in contrast to Ms. Welton's findings, Dr. Johnson did not opine that Plaintiff has any impaired short term memory or ideas of hopelessness.   Tr. 511.   Plaintiff also reported having no psychiatric history, and Dr. Johnson did not include depression or a mood disorder as part of Plaintiff's past medical history.   Tr. 519-10.   At the end of this visit, Dr. Johnson found that Plaintiff is competent and able to make decisions regarding the treatment plan and ordered him to return in sixty days.   Tr. 513.   Dr. Johnson did not render any opinion on Plaintiff's ability to perform basic work, observation of Plaintiff's current conditions, or a GAF score.   Tr. 509-14.   Dr. Johnson also did not indicate any medical plan for Plaintiff.   Tr. 513.   Hence, although the ALJ considered Dr. Johnson's opinion in evaluating Plaintiff's RFC, he gave only limited weight to Dr. Johnson's opinion.   Tr. 33.

Lastly, during the hearing before the ALJ, Plaintiff testified that he lives with his wife, daughter, who is twenty-two years old, and father-in-law, who is retired.

---

[5] As discussed by the ALJ, Dr. Johnson did not note visual hallucinations in the presenting problems or present illness portions of his examination note.   Tr. 33, 513.

Tr. 65.    Plaintiff also testified that he sometimes drives to shop with his family.    Tr. 68-69.    The ALJ considered and discussed this testimony in evaluating Plaintiff's social functioning.    Tr. 28.

Based on the review of the records and the ALJ's decision, the Court finds that Plaintiff's medical records do not show additional limitations, and the ALJ properly discussed Plaintiff's mental condition "as a whole."    *See Hunter*, 609 F. App'x at 558. The ALJ considered Drs. Bernot, Mendiolaza, and Johnson's treatment notes, all of which demonstrate that despite Plaintiff's depression and mood disorder, Plaintiff's psychiatric examinations did not show greater than mild limitations on his ability to perform basic work or engage in social activities.    Tr. 443-61, 464-80, 509-14.    The ALJ also considered the observations and opinion of Ms. Welton, who fully recorded Plaintiff's various alleged psychological problems such as feeling hopeless and worthless.    Tr. 33.    Even Ms. Welton noted that Plaintiff responded to all questions well, and his thought process and content were normal and appropriate.    Tr. 524. Ms. Welton also opined that Plaintiff's needs are not urgent.    Tr. 521.    In fact, Plaintiff's argument is based upon the evidence and mental limitations that the ALJ already considered and discussed.    Doc. 25 at 13-16; Tr. 33.    To the extent that the ALJ did not consider Plaintiff's medical records from the years 2011 and 2012, the Court finds that this error is harmless because the records from this time period support the ALJ's finding of mild difficulties in social functioning.    *See Hunter*, 609 F. App'x at 558; Tr. 360, 364-65, 370-71, 376-77, 378-79, 383-84, 392-94, 411-12, 428, 434-35, 436-37, 439-40.    Accordingly, the ALJ properly found that Plaintiff has mild

difficulties in social functioning and properly assessed Plaintiff's mental impairments in evaluating Plaintiff's RFC.   Tr. 28, 33.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.   Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the Commissioner's decision.   *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 8th day of February, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record